# UNITED STATES DISTRICT COURT.

RUSSELL STURGIS agt. THE STEAMBOAT JOSEPH JOHNSON.

In the matter of *salvage* service, there is no obligation of law, nor custom in the port of New York, requiring *steam tugs* to relieve each other *gratuitously*, when disabled and requiring assistance.

Where the *Joseph Johnson*, a tug employed in towing vessels in and out of New York harbor, came in collision with the schooner Henrico, off the Jersey shore below Sandy Hook, by which her smoke pipe was carried away, as well as some of the wheel arms and buckets, and part of the wheel house, and one end of her main shaft thrown out of its bed, her bowsprit broken off and her upper joiner work injured; being disabled from using her steam power, and left in an unnavigable condition, and after some twenty-four hours she drifted nearly into deep water and out of control of her anchor,

And the steam tug *Achilles* (of great strength and power) at this time having approached, and, at the request of the men on the *Joseph Johnson*, went to the schooner Henrico, (some five miles off,) and took off the master of the *Johnson*, (who had been on board of the schooner from the time of the collision,) and returned and passed a hawser to the *Johnson*, and towed her into New York, occupying some six hours in the whole,

*Held*, that the state of the *Johnson* was unquestionably one of danger, and constituted the interposition and recovery by the *Achilles* an act of *salvage*; and not one of *towage* merely; but no way attended with circumstances of extraordinary merit in personal efforts, or exposure of life or property by the salvors.

That on the facts disclosed $1000 was an adequate reward for the service rendered.

*New York, June*, 1860.

THIS was an action brought by the libelant, as the owner of the steam tug Achilles, to recover salvage for services rendered to the Joseph Johnson. On the 9th of March, 1855, the Joseph Johnson, a tug employed in towing vessels in and out of New York, and the schooner Henrico came in collision off the Jersey shore, below Sandy Hook, by which collision the smoke pipe of the steamboat was carried away, as well as some of the wheel arms and buckets, and part of the wheel house, and one end of her main shaft was thrown out of its bed. Her bowsprit was broken off and her upper joiner work injured. She was disabled from using her steam power, and was left in an unnavigable condition. Her master and one of her fire-

men remained on board the schooner, when the vessels separated after the collision. Both vessels thereupon anchored for the night from half a mile to a mile from the shore. The wind was blowing fresh off shore all night, during which both vessels commenced drifting out to sea, and by nine or ten o'clock on the morning of the 10th, the Johnson had got nearly into deep water and out of the control of her anchor. The schooner's cable had parted, and she had drifted four or five miles further out to sea.

At this time the Achilles, a vessel of great strength and power, built at a cost of about $46,000, for and employed in the same business as the Johnson, approached her, and asked her if she required assistance. The answer was given that she did; that her master was on board the schooner, and the Achilles was requested to go to the schooner and take him off. This was done in about an hour, and on the return of the Achilles with the master, a hawser was passed from the tug to the Johnson, by which she was taken in tow, and carried to New York in four or five hours from the time the Achilles returned to her, without further loss or damage of consequence to either vessel. There was great conflict of testimony among the twenty-one witnesses examined, as to the state of the wind and weather, the peril of the Johnson, and the difficulties and dangers of the service. The value of the Joseph Johnson was variously estimated at from $7,000 to $14,000. The defence claimed:

1. That the service rendered by the Achilles was one of towage merely.

2. That the reward was limited to $150 or $200, by agreement with the officers of the Achilles, provided her owner, when consulted, should require any pay at all; and,

3. That by the usage and custom of the port, steam tugs render gratuitously, aid and assistance in towing each other in case of being disabled or injured in pursuing their business in the port.

Sturgis agt. The Joseph Johnson.

BENEDICT, BURR & BENEDICT, *for libelant.*
BEEBE, DEAN & DONOHUE, *for claimant.*

Held by the court, BETTS, Judge. That according to the clear doctrine of the maratime law, the services rendered in this case were of a salvage character, and that the libelant is entitled to compensation for them upon that principle. (*The Charles Adolph,* 1 *Swabey Ad. R.,* 153; *The ship Raikes,* 1 *Haggard,* 246; *The Meg Merriles,* 3 *Hagg.,* 346; *The Versailles,* 1 *Curtis R.,* 353; *The Independence,* 2 *Id.,* 350; *The Reward,* 1 *W. Rob.,* 174.)

That on the testimony the evidence of the agreement to perform the service for $150 to $200 is met and repelled by a superior weight of testimony on the part of the libelant.

That there is no satisfactory foundation in the proofs for the alleged custom in this port, that tugs are bound to relieve each other gratuitously when disabled and requiring assistance. Very probably individual instances exist where the service has been rendered without charge, but no obligation of law is shown which exacts it as a right due to one strange vessel from another. If it assumes in any contingency the aspect of a right or privilege, it is one of imperfect obligation and out of the cognizance of courts of justice.

That the position of the Johnson in sight of the shore, in full daylight, off the mouth of her home port, and in the path of numerous vessels passing in and out of the harbor, many of them devoted to the business of searching for and aiding others requiring assistance, withdrew her from a condition of hopeless destitution. Her hull was sound, and she was in no immediate peril of foundering because of any inability to withstand the ordinary action of the waves. She was only deprived of self-moving power. That the action of the Achilles in going first for the master of the Johnson without any exhibition or apprehension of

immediate peril to the Johnson, indicates that there was nothing in the case beyond a prompt and skillful application of her capacity to the service. The state of the Johnson was unquestionably one of danger, and constituted the interposition and recovery by the Achilles an act of salvage, but no way attended with circumstances of extraordinary merit in personal efforts or exposure of life or property by the salvors.

That the consideration of the value of a tug constructed for, and actually pursuing this very business cannot be made a controlling element in estimating the value of her services, when she has not been sent for because of that particular quality, nor is that quality shown to have been indispensable to enable her to render the relief she afforded. She is rather to be considered in market, seeking for that class of business with other competitors, upon the recommendation of her superior qualities. When, then, in her ordinary routine of seeking business she undertakes the aid of a crippled vessel, there is no principle of law which entitled her to a *quantum meruit* for the particular service greater than would have been earned by her if worth less than half her cost, provided she would have been, notwithstanding such value, able to perform the work. Had the steamship Vanderbilt or Persia, or Adriatic chanced to have fallen in with the Johnson, and rendered the same assistance as was afforded by the Achilles, no court would measure the amount of compensation to either of those liners, beyond what would be a competent reward to the Achilles for the same service, it being within the scope of her ability to perform that service equally well, and they not having been required to go out specially to render the aid, or sought for to give it because of their extraordinary power and capacity.

That on the facts $1,000 is an adequate reward for the service as rendered.

Decree in favor of libelant for $1,000 with costs.